IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MARION LOERA, on behalf of N.V.,

    **Plaintiff,**

v.                                                                                             Case No. 1:11-cv-764 WDS

MICHAEL J. ASTRUE,
    Commissioner of Social Security,

    **Defendant.**

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court upon Plaintiff's *Motion to Reverse & Remand for Payment of Benefits, or in the Alternative, for Rehearing, with Supporting Memorandum* [Doc. 21], filed April 23, 2012. Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security who determined that Plaintiff's son is not eligible for benefits. Having considered Plaintiff's motion, Defendant's response [Doc. 22], Plaintiff's reply [Doc. 23], the administrative record and applicable law, the Court concludes that Plaintiff's motion should be DENIED.

### I. Background

Plaintiff's son Nathaniel was born January 2, 1994. Tr. 26. Plaintiff filed an application for Supplemental Security Income (SSI) on his behalf in April 2005, alleging a disability onset date of February 14, 2001.[1] The application was denied initially and on reconsideration. Tr. 81–83, 86–88. Plaintiff requested a hearing before an Administrative Law Judge (ALJ), the hearing was held, and the ALJ issued a written decision on September 12, 2007, denying benefits. Tr. 57–77, 79. Plaintiff requested review by the Appeals Council. Tr. 91–94. The Appeals Council vacated the ALJ's

---

[1]Plaintiff has given notice that Nathaniel, no longer a minor, filed a new application for SSI in April 2012 while this action was pending. [Doc. 25.]

hearing decision and remanded for further proceedings. Tr. 95–98.

The same ALJ held a second hearing on February 19, 2009. Nathaniel was represented by counsel, and both he and his mother testified at the hearing. Plaintiff alleged Nathaniel was disabled due to hearing problems and attention deficit/hyperactivity disorder (ADHD). The ALJ issued a written decision on September 10, 2009, denying benefits. Tr. 20–37.

Plaintiff filed a request for review by the Appeals Council. Tr. 11–19. The Appeals Council denied the request for review, Tr. 7–9, thus rendering the ALJ's decision the final decision of the Commissioner from which Plaintiff now appeals pursuant to 42 U.S.C. § 405(g).

## II. Legal Standards

This Court may only review the Commissioner's decision to determine whether the correct legal standards were applied and whether the factual findings are supported by substantial evidence in the record. *Langley v. Barnhart,* 373 F.3d 1116, 1118 (10th Cir. 2004). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (quotation marks and citation omitted). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Langley*, 373 F.3d at 1118 (quotation marks and citation omitted). In determining whether the Commissioner's findings are supported by substantial evidence, the Court should not re-weigh the evidence nor should it substitute its judgment for that of the Commissioner. *Id.*

The Commissioner has established a three-step sequential evaluation process for determining whether a child under eighteen years of age is disabled. The ALJ must determine whether: (1) the child is engaging in substantial gainful activity; (2) the child has an impairment or combination of

2

impairments that is severe; and (3) the child's impairment meets, medically equals, or functionally equals a listed impairment. *See Briggs ex rel. Briggs v. Massanari*, 248 F.3d 1235, 1237 (10th Cir. 2001); 20 C.F.R. § 416.924. If the ALJ determines at step one that the child is engaging in substantial gainful activity, the child is not disabled. 20 C.F.R. § 416.924(b). If the child is not engaging in substantial gainful activity, the analysis proceeds to step two where the ALJ determines if the child has a medically determinable ailment that is severe. 20 C.F.R. § 416.924(c). If the child does not have a medically determinable impairment, or the impairments cause no more than minimal functional limitations, the child is not disabled. 20 C.F.R. § 416.924(c). If the child has a severe impairment or combination of impairments, the analysis proceeds to step three where the ALJ determines whether the impairments meet, medically equal, or functionally equal, a listed impairment. 20 C.F.R. § 416.924(d).

In determining whether an impairment or combination of impairments functionally equals the listings, the ALJ must assess the claimant's functioning in terms of six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1). To functionally equal the listings, the claimant's impairment or combination of impairments must result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(a).

A limitation is "marked" if it "interferes seriously with your ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2). "'Marked' also means a limitation that is 'more than moderate' but 'less than extreme.' It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least two, but less than three, standard

deviations below the mean." 20 C.F.R. § 416.926a(e)(2).

A limitation is "extreme" if it "very seriously interferes with your ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(i). "Extreme" also means a limitation that is "more than marked" and is the rating given to the worse limitations. Id. "Extreme" does not necessarily mean a total lack of functioning, but "is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least three standard deviations below the mean." Id.

### III. Summary of the ALJ's Decision and Plaintiff's allegations of error

At step one, the ALJ found Nathaniel had not engaged in substantial gainful activity at any time relevant to the decision. Tr. 26. At step two, the ALJ found that Nathaniel has severe impairments consisting of ADHD, hearing loss, and a learning disorder. Tr. 26. At step three, the ALJ found that Nathaniel does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. Tr. 26.

The ALJ further found at step three that Nathaniel does not have an impairment or combination of impairments that functionally equals the listings. Tr. 26. In evaluating functional equivalence, the ALJ made the following findings with respect to each of the six domains: (1) "marked" limitations in acquiring and using information; (2) "less than marked" limitations in attending and completing tasks; (3) "less than marked" limitations in interacting and relating with others; (4) no limitations in moving about and manipulating objects; (5) no limitations in the ability to care for himself; and (6) "less than marked" limitations in health and physical well-being. The ALJ accordingly found Nathaniel was not disabled.

Plaintiff makes allegations of error in connection with the ALJ's findings in four of the six

4

domains. With respect to the first domain, acquiring and using information, she claims the ALJ erred by considering only Nathaniel's hearing limitations. She also argues the evidence supports a finding of "extreme" limitation, rather than "marked" as the ALJ found. With respect to the second domain, attending and completing tasks, she argues the evidence supports a finding of "marked" limitation, rather than "less than marked" as the ALJ found. She also argues the ALJ's failure to discuss the finding of the agency doctor is cause for remand. With respect to the third domain, interacting and relating with others, she argues the evidence supports a "marked" limitation, rather than "less than marked" as the ALJ found. Finally, with respect to the sixth domain, health and physical well-being, she argues the evidence supports a "marked" limitation, rather than "less than marked" as the ALJ found.

## IV. Discussion

### A. The domain of acquiring and using information

In the domain of acquiring and using information, the ALJ considers how well the claimant acquires or learns information and how well he uses the information he has learned. 20 C.F.R. §416.926a(g). The ALJ found Nathaniel has a "marked" limitation in this domain. Plaintiff argues first, that the ALJ considered only Nathaniel's hearing impairments, and second, that the evidence supports an "extreme" limitation.

The ALJ's decision squarely contradicts Plaintiff's first argument. The ALJ stated:

> The claimant is below grade level and is in Special Education Classes for math, reading language and reading [sic.] An evaluation by a school psychologist, Kathy Bradley-Askren, Ph.D., in April 2008 noted that claimant needed bilateral hearing aids, preferential seating close to speaker, and full view of the speaker's face, and that his hearing aids needed to be checked once a month. Problems that needed to be addressed were that the claimant did not always wear his hearing aids in school, and he needs protective devices when exposed to high levels of noise.

5

Tr. 32. This excerpt demonstrates that the ALJ considered not only Nathaniel's hearing problems, but also his grade level and need for special education classes.

In support of her second argument, Plaintiff catalogues the evidence she claims supports a finding of an "extreme" limitation. [Doc. 21 at 5–12.] The question, however, is whether the ALJ's finding of a "marked" limitation is supported by substantial evidence. The Court concludes that it is supported by substantial evidence.

The record supports the conclusion that Nathaniel dislikes and has difficulties in school, and has limitations in acquiring and using information. These limitations, however, are not so severe as to qualify as "extreme." Nathaniel has bilateral hearing loss in a narrow high frequency range, of a mild degree in the right ear and moderate degree in the left ear. Tr. 312–13. Uncorrected, the impairment may pose hearing challenges in adverse listening environments such as the classroom. Tr. 312–15. Nathaniel has been prescribed hearing aids, and his hearing is normal when he wears them. Tr. 364.

Academically, Nathaniel is behind his peers in the areas of reading, writing, and math, and has been assessed at two grade levels below his actual grade. Tr. 291–92. His teachers have consistently noted that Nathaniel has difficulties with reading and written expression. Tests of his memory, verbal abilities, nonverbal reasoning abilities and other cognitive functions generally showed him to be in the "low average range" or "average range" compared to others of his same age. Tr. 234–38. Significant discrepancies in reading ability appear consistent with a child who is Specific Learning Disabled. Tr. 238. During part of the school day, he attends special education classes to receive extra assistance in a small group setting with limited distractions. Tr. 256–57.

On the other hand, Nathaniel testified he is able learn to play new games for his Xbox and

to read and understand game manuals. Tr. 585. Teachers report he is "very very street-wise," "a natural leader," and a "good critical thinker." Tr. 405. More importantly, there is no indication Nathaniel's functioning "is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least three standard deviations below the mean" as would qualify for an "extreme" limitation. On the Wechsler Intelligence Scale for Children (WISC), Nathaniel registered a Full Scale I.Q of 92, which is in the average range, and within one standard deviation of the mean score of 100. Tr. 213–15. The Court therefore rejects Plaintiff's argument that the ALJ erred by finding Nathaniel suffers from marked, rather than extreme limitations, in the domain of acquiring and using information.

      **B.**      **The domain of attending and completing tasks**

In the domain of attending and completing tasks, the ALJ considers "how well you are able to focus and maintain your attention, and how well you begin, carry through, and finish your activities." 20 C.F.R. § 416.926a(h). The ALJ found Nathaniel has a "less than marked" limitation in this domain. Tr. 33. Plaintiff argues Nathaniel's limitation in this domain is at least "marked." Once again, the question is whether the ALJ's finding is supported by substantial evidence, *i.e.*, "more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citation omitted).

The ALJ found that Nathaniel's ADHD is controlled with medication. Tr. 37. There is substantial evidence to support this conclusion. Nathaniel's primary care physician, Dr. Steven Cohen, referred Nathaniel to Dr. Tony Kreuch in 2005 for evaluation after Nathaniel was diagnosed with ADHD. Tr. 290. Dr. Kreuch, a neuropsychologist, reviewed Nathaniel's health records, conducted a clinical interview with Nathaniel, and administered tests. Tr. 290–93. Based on a test

designed to evaluate "aspects of sustained attention typically associated with attentional disorders, Dr. Kreuch concluded: "Nathaniel is currently being treated for ADHD, and the current findings are supportive of a child with ADHD, currently responding favorably to medication intervention, with improved patterns of sustained attention." Tr. 292.

Dr. Cohen reported in July 2005 that Nathaniel "is taking his medication and has done much better in school." Tr. 302. At the hearing in 2009, Nathaniel testified that when he does not take his medicine, "I'm like hyperactive, like, I won't do my work; I'll just be talking to everybody and stuff." Tr. 586. But when he takes his medicine, "I'm like calm, and I'll like get focused and stuff." Tr. 586. He also testified that he was able to bring his grades up in school by staying on task, paying attention, and turning in his homework. Tr. 580.

Plaintiff points to evidence that Nathaniel's attention problems in school and at home continued after medication was prescribed; for example, his special education teacher in seventh grade reported that "his attention span and motivation were less than other 7th graders" and his mother testified he often needs reminders to perform his chores and do his homework. Tr. 362, 572–73. Plaintiff also notes that several teachers reported Nathaniel is easily distracted, has problems with follow through and with completing homework, and avoids tasks that require ongoing mental effort. Tr. 159, 243, 384–85, 431–38. Plaintiff points out that an agency physician, Dr. Chiang, found a "marked" impairment in Nathaniel's ability to attend and complete tasks. Tr. 294–96. Furthermore, as Plaintiff points out, his third grade teacher rated him as having "a very serious problem" in the activities of "completing class/homework assignments" and "working at reasonable pace/finishing on time." Tr. 118. On the other hand, for the other eleven activities that make up this domain, the same teacher rated him as having less serious problems, or even no

8

problems, as did his other teachers. Tr. 118.

Assuming, as Plaintiff argues, the record evidence would have supported a finding of "marked" limitation in the domain of attending and completing tasks, the argument nevertheless fails. "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Lax*, 489 F.3d at 1084 (citation and quotation marks omitted). The Court does not re-weigh the evidence even if it might have reached a different finding had it been the factfinder. *White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2001). Given the substantial evidence supporting the ALJ's conclusion that Nathaniel's attention difficulties are controlled with medication, the Court concludes the ALJ did not err by finding that Nathaniel's limitations in this domain are "less than marked."

The Court also rejects the argument that the ALJ's failure to discuss Dr. Chiang's opinion is cause for remand. Dr. Chiang, an agency consultant, filled out a check-the-box form in September 2005 in connection with Plaintiff's request for reconsideration. Tr. 294–99. She checked the box for "marked" limitation in the domain of Attending and Completing Tasks, "less than marked" for the domains of Acquiring and Using Information, and Interacting and Relating with Others, and "no limitation" in the domain of Caring for Yourself. Tr. 296–98. She left blank the remaining two domains, Moving About and Manipulating Objects, and Health and Physical Well-Being. Tr. 297.

The ALJ is not required to discuss every piece of evidence; he must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects. *See Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996). Dr. Chiang's opinion is neither uncontroverted nor significantly probative.

First, Dr. Chiang's evaluation is controverted by the near-contemporaneous opinion of Dr.

9

Kreuch, a nonagency physician who—after examining Nathaniel and evaluating him specifically for attention deficiencies at the request of Nathaniel's primary care physician—found the ADHD was controlled by medication. Second, Dr. Chiang's opinion is not "significantly probative." The Tenth Circuit has long held that the findings of a nontreating physician based upon limited contact are of suspect reliability. *Frey v. Bown*, 816 F.2d 508, 515 (10th Cir. 1987) (citing *Broadbent v. Harris*, 698 F.2d 407, 412–14 (10th Cir. 1983)). This is especially true when the physician's report—as in this case—"consists solely of boxes checked on the Secretary's form." *Frey*, 816 F.2d at 515. Dr. Chiang's report furthermore is not supported "by thorough written reports or persuasive testimony" and there is no indication of careful study of Nathaniel's history or prior examinations. *See Frey*, 816 F.2d at 515. Dr. Chiang merely noted in summary fashion that Nathaniel has ADHD, and that teacher questionnaires indicate he has serious problems with sustained focus and needs constant redirection. Tr. 299. The court concludes Dr. Chiang's report is neither uncontroverted nor significantly probative such that remand is required solely so the ALJ can discuss it.

Plaintiff cites 20 C.F.R. § 416.927(d) and *Carpenter v. Astrue* in support of her argument that failure to discuss Dr. Chiang's report is error requiring remand. [Doc. 21 at 16.] The Court concludes that neither of these require remand. The regulation Plaintiff cites states that the Commissioner gives no special significance to medical source opinions on issues reserved to the Commissioner. 20 C.F.R. § 416.927(d). It does not, as Plaintiff claims, require remand for a discussion of an agency consultant's report.

In the case Plaintiff cites, *Carpenter v. Astrue,* the ALJ erred by failing to discuss a physician's report that was in the form of a checklist. *Carpenter v. Astrue*, 537 F.3d 1264, 1267 (10th Cir. 2008). *Carpenter* is distinguishable for the very reason *Frey* controls. *Carpenter* involved

an examining physician who "made notes or circled the medical terms for her findings on her own medical form clearly set up to record the results of a thorough physical examination; it was not the agency's checklist [residual functional capacity] form." *Carpenter*, 537 F.3d at 1267. *Frey*, by contrast, is on point because it involved a report similar to Dr. Chiang's—"a nontreating physician's checkmarks on the agency's...form based on the most limited sort of contact and examination[.]" *Carpenter*, 537 F.3d at 1267 (quoting *Frey*, 816 F.2d at 515). Dr. Chiang's opinion is even less probative than the opinion at issue in *Frey* because there is no indication that Dr. Chiang examined Nathaniel. Accordingly, the Court concludes Plaintiff has failed to cite any basis requiring remand.

**C.     The domain of interacting with others**

In the domain of interacting with others, the ALJ considers "how well you initiate and sustain emotional connections with others, develop and use the language of your community, cooperate with others, comply with rules, respond to criticism, and respect and take care of the possessions of others." 20 C.F.R. § 416.926a(i). The ALJ found Nathaniel had a "less than marked" limitation in this domain. Tr. 34.

Plaintiff argues there is "ample evidence" in support of a more a more serious limitation. She points to evidence that teachers reported Nathaniel has problems expressing anger appropriately and that he has problems with conversational skills. She also points to evidence that Nathaniel was a discipline problem at school, and one incident in particular when he was sent to the principal's office for "tossing things around the room, including the clip he opened up into a dangerous item." Tr. 266. There are reports that he engaged in disruptive behavior by talking on the bus at a railroad crossing, and that he was suspended for fighting. Tr. 270. Some reports describe his behavior as "bullying." Tr. 405, 408. In 2008, Nathaniel reported suicidal thoughts. Tr. 455–56. Plaintiff

argues that his failure to take his medication and wear his hearing aids also is evidence of a marked impairment in this domain.

The Court will not re-weigh the evidence. There is such relevant evidence as a reasonable mind might accept as adequate to support the conclusion that Nathaniel's impairment in the domain of interacting with others is "less than marked." The ALJ noted that Nathaniel sometimes missed school because of doctors' appointments, and that he was teased in school because of his weight and hearing aids. Tr. 34. The ALJ also considered Nathaniel's own testimony that his friends were "okay" with him wearing hearing aids, and that the school psychologist said Nathaniel "was a good kid, fairly good critical thinker, very street wise, a natural leader, polite and respectful most days." Tr. 34. The ALJ also discussed school reports that Nathaniel gets along well with his peers and teachers most of the time and helps neighbors with yard work. Tr. 30.

In addition to the evidence the ALJ discussed, the Court's own review of the record indicates that despite some problems with fighting, Nathaniel has friends at school and likes to play football with them at lunch. Tr. 581–81. The school psychologist described him as "friendly and engaged." Tr. 365. Nathaniel's teachers note that his excessive socializing in class is a cause of distraction. Tr. 362, 497. Accordingly, the Court concludes that the ALJ's finding of "less than marked" in the domain of interacting with others is supported by substantial evidence.

    **D.**    **The domain of Health and Physical Well-Being**

In this domain, the ALJ considers "the cumulative physical effects of physical or mental impairments and their associated treatments or therapies on your functioning that we did not consider in the evaluation of [the child's ability to move about and manipulate objects.]" 20 C.F.R. § 416.926a(l). The regulations explain that physical and mental impairments may have physical

effects such as "generalized weakness, dizziness, shortness of breath, reduced stamina, fatigue, psychomotor retardation, allergic reactions, recurrent infection, poor growth, bladder or bowel incontinence or local or generalized pain." 20 C.F.R. § 416.926a(l)(1). In addition, the medications or treatments a claimant receives can have physical effects that limit functioning, as can chronic or episodic conditions. 20 C.F.R. § 416.926a(l)(2), (3). The ALJ found that Nathaniel has "less than marked" limitations in this domain. Tr. 37.

Plaintiff again invites the Court to overturn the ALJ's decision by re-weighing evidence. She argues that the evidence supports the conclusion that Nathaniel's actual functioning is severely hampered by the combination of his impairments. Plaintiff also argues that the ALJ did not consider the impact of Nathaniel's hearing loss, which requires that Nathaniel wear hearing aids, be seated away from auditory distractions, be seated near the speaker and be able to see the speaker's face.

While Plaintiff's recitation of the evidence is correct, there is no indication that the treatment of Nathaniel's hearing impairment produces marked physical effects. Accordingly, the Court concludes the ALJ's finding of "less than marked" limitations in this domain is supported by substantial evidence.

To the extent Plaintiff argues the ALJ did not engage in the "whole child" analysis, the Court rejects the argument. The "whole child" approach is a "technique for determining functional equivalence [that] accounts for all of the effects of a child's impairments singly and in combination—the interactive and cumulative effects of the impairments." SSR 09-1p, 2009 WL 396031, *2 (Feb. 17, 2009). The "whole child" analysis is a process by which the ALJ considers: (1) how the child functions in various activities and settings; (2) which domains are involved in performing the activities; (3) whether the child's medically determinable impairments could account

13

for limitations in the child's activities; and (4) to what degree the impairments limit the child's ability to function age-appropriately in each domain. SSR 09-1p, 2009 WL 396031, at *2–*3. Although ALJs are required to consider the "whole child," they are not required to discuss all of the considerations; they are only required "to provide sufficient detail so that any subsequent reviewers can understand how they made their findings." SSR 09-1p, 2009 WL 396031, at *3.

Consistent with the "whole child" technique, the ALJ provided an extensive overview of the evidence in the record and described Nathaniel's activities in various settings (at school and at home). Tr. 27–31. The ALJ also considered each of the domains and rated the severity of the impairments. Tr. 31–37. The ALJ provided sufficient detail for the Court to understand how he made his findings.

IT IS THEREFORE ORDERED that Plaintiff's *Motion to Reverse & Remand for Payment of Benefits, or in the Alternative, for Rehearing, with Supporting Memorandum* [Doc. 21], filed April 23, 2012, is **DENIED.**

_____
**W. DANIEL SCHNEIDER**
**UNITED STATES MAGISTRATE JUDGE**